# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY J. MUELLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:12CV1199 HEA |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 [Doc. No. 1]. Respondent has filed his Response to the Court's Order to Show Cause. [Doc. No. 11]. Petitioner has filed a reply. [Doc. No. 18]. For the reasons set forth below, the Petition will be denied and dismissed.

**Background**

Following a deadly traffic accident, Petitioner was charged with one count of first-degree involuntary manslaughter and five counts of second-degree assault. On April 14, 2009, the State extended a plea offer, the terms of which included Petitioner pleading guilty to the charged offenses, the State recommending sentence of twelve years imprisonment, and Petitioner waiving his right to a preliminary hearing. The offer was to remain open for sixty days. Petitioner waived his right to a preliminary hearing on May 4, 2009. Subsequently, on May 14, 2009, the State revoked the plea offer and filed an amended information. Petitioner moved for a preliminary hearing, in light of the State's revocation of the initial plea offer, and the trial court denied the motion.

On September 21, 2009, Petitioner pled guilty to all of the charges in the amended information—one count of second-degree murder, one count of felony driving while intoxicated,

and five counts of second-degree assault. Pursuant to the new plea agreement, the State would recommend a sentence of twenty years imprisonment on the second-degree murder charge and seven years concurrent on the remaining six counts. Petitioner would reserve the right, through his counsel, to argue for a lesser sentence. On December 14, 2009, Petitioner was sentenced, as recommended by the State, to twenty years imprisonment on the second-degree murder charge and seven years concurrent on the remaining six counts. Petitioner did not appeal the sentence.

On May 6, 2010, Petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 24.035. Counsel entered an appearance for Petitioner on May 21, 2010, and filed an amended motion on August 3, 2010. In an order dated October 10, 2010, the motion court denied the relief sought by Petitioner. The Missouri Appeals Court affirmed the denial of the post-conviction relief motion on September 13, 2011, and the mandate issued on October 7, 2011.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 409.

## Grounds for Relief

As a basis for relief under his federal habeas corpus application this Petitioner asserts that (1) the State breached the offered plea agreement and Petitioner's guilty plea was therefore unknowing, unintelligent, and involuntary; (2) his trial counsel was ineffective because he failed to object to evidence and arguments during the sentencing hearing; (3) his trial counsel was ineffective because he failed to explain the range of punishment to Petitioner; (4) his trial counsel was ineffective because he failed to call more character witnesses at the sentencing hearing; and (5) his trial counsel was ineffective for failing to conduct sufficient discovery or investigate.

Respondent asserts that all of Petitioner's grounds for federal habeas relief lack merit. Respondent also argues that the Petition is untimely and procedurally barred as it was not appropriately pursued in the State court.

**Discussion**

**A.     Respondent's Exhibits**

The Court begins its sojourn upon the sea of the pleadings by addressing Petitioner's objection in his Reply to the exhibits Respondent submitted to the Court with his Response, and Petitioner's request that the Court strike all portions of the Response that reference these exhibits. Petitioner's objection and request to strike are based on Respondent's purported failure to provide Petitioner with a copy of these exhibits, after filing them with the Court in paper form. The Court will deny Petitioner's request because Respondent's exhibits, which are identified on the second page of the Response, are effectively identical to the exhibits submitted by Petitioner with his Petition. [*See* Doc. No. 1-1].[1]

**B.     Timeliness of Filing**

Pursuant to AEDPA, there is a one-year statute of limitations when a state prisoner petitions for federal habeas corpus relief. *King v. Hobbs,* 666 F.3d 1132, 1134–35 (8th Cir. 2012) (citing 28 U.S.C. § 2244(d)(1)). The statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The date on which judgment becomes final, and the statute of limitations begins to run, differs based on the level of review sought by the petitioner. If the petitioner sought review in the "state court of last resort," then the Supreme Court has jurisdiction to review the appeal and judgment will be considered final 90 days after the conclusion of the direct criminal appeal in the

---

[1] The parties' identical exhibits are: A) the legal file from Petitioner's post-conviction appeal; B) Petitioner's brief from his post-conviction appeal; C) Respondent's brief from the post-conviction appeal; and D) the Missouri Court of Appeals decision affirming the denial of post-conviction relief. The only divergence between the parties' sets of exhibits is their respective Exhibit E—Petitioner submitted a letter from the Clerk of the Missouri Court of Appeals informing the parties that the mandate had issued, whereas Respondent submitted the mandate itself.

state system. *Id.* (citing *Gonzalez v. Thayer,* 132 S. Ct. 641, 656 (2012)); *see also* Sup. Ct. R. 13.1; 28 U.S.C. § 1257(a). On the other hand, should a state prisoner opt not to seek review in the "state court of last resort," then "the judgment becomes final on the date that the time for seeking such review expires." *Id.* (quoting *Gonzalez*, 132 S. Ct. at 646). Once judgment is final, the statute of limitations begins to run. *See* 28 U.S.C. § 2244(d)(1)(A).

Here, Petitioner was sentenced on December 14, 2009, and did not file a direct appeal of his conviction. Pursuant to Missouri Supreme Court rules 30.01 and 81.04, Petitioner had 10 days after his conviction in which to file his appeal. The statute of limitations under AEDPA therefore began to run on December 24, 2009.

The one-year limitations period was tolled, however, during the pendency of Petitioner's post-conviction proceedings. 28 U.S.C. § 224(d)(2). Accordingly, the statute of limitations ran 133 days from December 24, 2009 through May 6, 2010, the day Petitioner filed his motion for post-conviction relief. The statute began to run again on October 7, 2011, the date of the issuance of the mandate in Petitioner's post-conviction proceedings. *See Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006).

The State asserts that the Petition is untimely. In support of this contention, the State notes that the Petition was post-marked on June 29, 2014, which was 266 days after the issuance of the mandate in Petitioner's post-conviction proceedings. When combined with the 133 days that elapsed between the finalization of Petitioner's sentence and his initiation of post-conviction proceedings, the statute would have run for a total of 399 days.

However, Petitioner asserts in his Reply that he originally mailed his Petition on May 10, 2012. The Court notes that the declaration within the Petition is signed and dated May 10, 2012. [Doc. No. 1 at 15]. According to Petitioner, he wrote to the Clerk of Court to inquire about the status of his Petition on June 18, 2012, and, when he received no response, he mailed his Petition

a second time on June 25, 2012. Included with the Petition that was filed is a filing form dated May 10, 2012 [Doc. No. 1-2]; Petitioner's June 18, 2012 letter to the Clerk of Court inquiring about his May 10, 2012 Petition [Doc. No. 1-3 at 4]; and a declaration of service, dated June 25, 2012, stating that Petitioner initially mailed the Petition on May 10, 2012 [Doc. No. 1-4]. Further, Petitioner included with his Reply a June 29, 2012 letter from the Clerk of Court informing him that his May 10, 2012 Petition was not received, as well as a July 9, 2012 letter Petitioner sent to the mailroom of his prison inquiring whether the May 10, 2012 Petition was sent out. [Doc. No. 18 at 28, 30].

The "prison mailbox rule" applies to decide whether a § 2254 petition is timely filed. *See Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999), *abrogated on other grounds by Riddle v. Kemma*, 523 F.3d 850 (8th Cir. 2008) ("We hold that for purposes of applying 28 U.S.C. § 2244(d), a pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court."). Under this rule, "a pro se inmate's § 2254 petition is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing." *Nichols*, 172 F.3d at 1077 n.5 (citing Fed. R. App. P. 4(c)(1)); *see also* Rule 3(d) of the Rules Governing Habeas Corpus Cases Under Section 2254.

Applying the prison mailbox rule and deeming the Petition filed as of May 10, 2012, the Court finds that the statute ran 216 days after the issuance of the mandate in Petitioner's post-conviction relief proceedings on October 7, 2011. When combined with the 133 days that elapsed between the finalization of Petitioner's sentence and his initiation of post-conviction relief proceedings, the statute ran for a total of 349 days. Based on the foregoing, the Court finds that the Petition is timely.

**C.     Ground One**

Petitioner argues in Ground One that the state courts erred its finding that: he was not deprived of his due process rights when the State "breached" the original plea offer; his due process rights were not violated when he was deprived a preliminary hearing; and his plea was knowing, intelligent, and voluntary. For the reasons that follow, none of these findings were contrary to, or unreasonable applications of, clearly established federal law. Accordingly, Ground One is denied.

As to Petitioner's contentions that the State revoked its initial plea offer and deprived Petitioner of his right to a preliminary hearing, the Court notes that, under 28 U.S.C. § 2254(a), a district court may only entertain a petition for writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." In other words, grounds that do not claim a violation of federal law are not cognizable in a federal habeas petition. *E.g.*, *Middleton v. Roper*, 455 F.3d 838, 852 (8th Cir. 2006). Neither of these claims are cognizable in a federal habeas petition.

The Supreme Court found in *Missouri v. Frye* that the question of "[w]hether the prosecution . . . [is] required to [adhere to a plea offer accepted by a defendant] is a matter of state law, and it is not the place of th[e] [Supreme] Court to settle those matters." 132 S. Ct. 1399, 1411 (2012). The *Frye* Court further noted that "[a] state *may choose* to preclude the prosecution from withdrawing a plea offer once it has been accepted . . . ." *Id.* (emphasis added). Accordingly, Petitioner's claim that his due process rights were violated by the State allegedly breaching the plea agreement is not cognizable in a federal habeas petition.[2]

Further, "it is uniformly held that a defendant is not entitled to a preliminary hearing as a matter of constitutional right." *Collins v. Swenson*, 443 F.2d 329 (8th Cir. 1971) (citation

---

[2] The *Frye* Court further observed that "[i]n Missouri, it appears 'a plea offer once accepted by the defendant can be withdrawn without recourse' by the prosecution." 132 S. Ct. at 1411 (quoting *Frye v. State*, 311 S.W.3d 350, 359 (Mo. Ct. App. 2010)); *see also Kline v. State*, 437 S.W.3d 290, 294 (Mo. Ct. App. 2014) ("[T]he State can withdraw a plea offer, even an accepted plea offer, at any time prior to the entry and acceptance of the plea by a trial court." (Mo. Ct. App. 2014) (citation and internal quotation marks omitted).

omitted); *see also Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (noting that "a judicial hearing is not prerequisite to prosecution by information."). Thus, to the extent that Ground 1 alleges that Petitioner was denied the right to a preliminary hearing, the court finds that Ground 1 does not allege a violation of federal law and that, therefore, this aspect of Ground 1 is not cognizable pursuant to § 2254.

Petitioner further argues that the state courts "erred in finding that Petitioner understood what agreement he was pleading guilty to and that the first agreement had been revoked." [Doc. No. 1 at 30]. The record belies this contention.

The motion court explained:

During the plea hearing Movant indicated to the Court that he discussed the case with his Counsel and also had ample opportunity to discuss his case with Counsel. He indicated that he specifically discussed with his Counsel his intention to plead guilty to the amended information that was filed on May 14, 2009 with his attorney and his intention to plead guilty to those charges. He also indicated that he had enough time to discuss the charges with his attorney. Movant then plead [sic] guilty to each of the seven counts in the amended information. (Tr. p. 2-5). Movant further indicated he knew he had the right to a speedy and public jury trial and that by pleading guilty he gave up that right (Tr. p. 5, lines 22-25; p. 6, line 1). Further, Movant indicated that by pleading guilty he was giving up the presumption of innocence, giving up the right to present a defense, giving up the right to cross-examine witnesses against him and giving up the right not to incriminate himself (Tr. p. 6-7). Movant indicated to this Court that he had not been threatened or offered any reward to plead guilty. (Tr. p. 11, lines 18-23). He also indicated that he knew the Court was not required to accept the plea bargain. (Tr. p. 12, lines 2-4). Movant indicated to the Court he was pleading guilty pursuant to a plea bargain. When Counsel was asked what the plea agreement was he stated, "On Mr. Mueller's plea of guilty, the State has agreed to recommend twenty years, Missouri Department of Corrections to be served on Count I, concurrent sentences of seven years on Counts II – VII; . . . In addition, Your Honor, it's contemplated by the parties that Mr. Mueller, through his Defense Counsel, will ask the Court to consider a sentence of less than twenty years at the time of sentencing. . . ." (Tr. p. 13, lines 7-25). Movant specifically stated that was his understanding of the agreement. (Tr. p. 14, lines 2-4). Furthermore, Defense Counsel field [sic] a signed copy of the plea bargain with the Court outlining those terms. The Defendant signed this agreement on September 21, 2009 on the day of his plea.

[Doc. No. 1-1 at 35]. This Court, upon its independent review of the record, finds this to be an accurate reflection of the proceedings. Further, the Missouri Court of Appeals found:

> [T]here was nothing involuntary about Movant's plea. Movant was fully informed and acknowledged that he was aware of the consequences of the applicable plea agreement. The record shows that based on this agreement he entered his pleas. Movant cannot now claim a due process violation based upon the terms of the revoked plea offer. Because Movant was fully aware of the terms of the plea agreement under which he entered his guilty pleas, and because the terms of that agreement were followed, Movant has failed to establish any prejudice. The motion court's findings and conclusions are not clearly erroneous.

[Doc No. 1-1 at 64].

The Court finds, based on the record of the proceedings, that the state courts' holdings with regard to the voluntariness of Petitioner's plea, were neither contrary to, or unreasonable applications of, clearly established federal law. Ground One is denied.

### D. Procedural Default

Respondent argues that Petitioner's other grounds for relief—all based on claims of ineffective assistance of trial counsel—are procedurally defaulted because, after raising them in his pro se motion for post-conviction relief, Petitioner's post-conviction relief counsel neither raised them in his amended motion for post-conviction relief, nor on appeal.

One who pursues relief under 28 U.S.C. §2254(b)(1)(A) must have exhausted the remedies available in the courts of the State. In order to effectuate the fulfillment of this requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before presenting those issues as application for federal habeas relief in federal court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). "A federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court"; otherwise, they are defaulted. *Winfield v. Roper,* 460 F.3d 1026, 1034 (8th Cir. 2006).

Exhaustion "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac,* 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). Thus, "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law," the exhaustion requirement is satisfied. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland,* 518 U.S. 152, 161-62, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996).

In Missouri, "habeas corpus is not a substitute for appeal or post-conviction proceedings." *State ex rel. Simmons v. White,* 866 S.W.2d 443, 446 (Mo. banc 1993). "Missouri law requires that a habeas petitioner bring any claim that a conviction violates the federal or state constitution, including a claim of ineffective assistance of counsel, in a motion for post-conviction relief." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006). Accordingly, an offender who fails to raise his claims on direct appeal or in post-conviction proceedings has procedurally defaulted those claims "and cannot raise [the waived claims] in a subsequent petition for habeas corpus." *State ex rel. Nixon v. Jaynes,* 63 S.W.3d 210, 214 (Mo. banc 2001).

Petitioner herein did not file a direct appeal of his 2009 sentence, and failed to raise ineffective assistance of counsel in his amended motion for post-conviction relief. These claims are, therefore, procedurally barred. His ship cannot sail this sea.

However, Petitioner argues that his post-conviction counsel was ineffective in failing to raise these claims for ineffective assistance of trial counsel in his amended motion for post-conviction relief. The Supreme Court held in *Martinez v. Ryan* that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a

> federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. 1309, 1320 (2012). Under Missouri law, claims of ineffective assistance of counsel cannot be raised on direct appeal, but rather must be raised in a motion for post-conviction relief. *Arnold v. Dormire*, 675 F.3d 1082, 1097 (8th Cir. 2012) (citing *State v. Wheat*, 775 S.W.2d 155, 157 (Mo. banc 1989), o*verruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008)). Therefore, the default here may be excused if any of the eliminated grounds of ineffective assistance of trial counsel was "substantial," "which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318. The Court will, therefore, review each of Petitioner's claims of ineffective assistance of trial counsel to determine if any of them have merit.

**E.     Grounds Two, Three, Four, and Five**

To establish a claim of ineffective assistance of counsel, a movant must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, under the "performance" component, the movant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Id.* at 687. Judicial scrutiny of counsel's performance is "highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, under the "prejudice" component, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not sufficient for a defendant to show that the error had some 'conceivable effect' on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the

proceeding." *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir. 2004) (quoting *Strickland*, 466 U.S. at 693).

In Ground Two, Petitioner argues that his trial counsel was ineffective by failing to object to evidence and arguments during the sentencing hearing. However, Petitioner only identifies statements that accurately reflect the facts which he admitted at the plea hearing. Here, Petitioner has failed to demonstrate the requisite performance and prejudice components of ineffective assistance of counsel. *See Strickland*, 466 U.S. 668. Ground Two lacks merit.

In Ground Three, Petitioner asserts that his trial counsel was ineffective by failing to explain the range of punishment to Petitioner. Even assuming, *arguendo*, that counsel did so fail, there was no prejudice because the range of punishment was explained to Petitioner at the plea hearing. [Doc. No. 1-1 at 13]. When asked by the trial court if he understood the punishment range, Petitioner answered in the affirmative. [*Id.*]. Further, the plea agreement which Petitioner signed specified that the State would recommend a sentence of twenty years imprisonment. [*Id.* at 10]. Accordingly, Petitioner cannot show prejudice. Ground Three lacks merit.

In Ground Four, Petitioner contends that his trial counsel was ineffective in failing to call more character witnesses at the sentencing hearing. Counsel called Petitioner's two sons, whom testified as to his character. Petitioner fails, however, to identify in his Petition any additional character witnesses whom counsel allegedly should have called, or to what they would have testified. In his Reply, Petitioner notes that he provided a list of potential character witnesses in his pro se motion for post-conviction relief. The list appears to be comprised primarily of other family members. The Eighth Circuit has found that "[c]ounsel's decision not to call particular witnesses during the penalty phase of trial must be viewed as of the time it was made, and his decision is presumed to be one of trial strategy unless clearly shown to be otherwise." *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006) (citations and internal quotation marks omitted).

Further, because additional character witnesses would have, presumably, offered cumulative character testimony to that introduced by Petitioner's sons, counsel was not ineffective in declining to call them as witnesses at the sentencing hearing. *Id.* (citing *Bucklew v. Luebbers*, 436 F.3d 1010 (8th Cir. 2006) (counsel not ineffective for not calling witnesses whose testimony would be cumulative); *Hall v. Luebbers*, 296 F.3d 685, 694 (8th Cir. 2002) (counsel not ineffective for failing to adduce cumulative evidence)). Petitioner has failed to demonstrate deficient performance of his counsel or prejudice. Ground Four lacks merit.

In Ground Five, Petitioner argues that his trial counsel was ineffective by failing to conduct sufficient discovery or investigate. In his Reply, Petitioner explains that "it is very clear that if Petitioner's trial counsel never talked to, or investigated the witnesses or the case completely that trial counsel was uninformed of what these witnesses would have testified to." [Doc. No. 18 at 24]. The witnesses in question, family members of the individual killed in the accident, testified with regard to their feelings regarding sentencing. It is unclear how Petitioner believes that counsel was ineffective, in the *Strickland* sense, in not questioning them. Accordingly, Ground Five lacks merit.

Therefore, because none of Petitioner's claims for ineffective assistance of trial counsel are "substantial," his post-conviction counsel did not err in eliminating these claims from his amended motion for post-conviction relief. Accordingly, Grounds Two, Three, Four, and Five are procedurally defaulted without cause and are dismissed.

**F.    Conclusion**

The state courts' rulings with respect to Ground One were neither contrary to, nor unreasonable applications of, clearly established federal law. Grounds Two, Three, Four and Five are procedurally barred. Petitioner has failed to establish cause and prejudice for the failure to exhaust these claims. Thus, Petitioner is not entitled to any relief.

**Certificate of Appealability**

If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c). Based on the record, and the law as discussed above, Petitioner has failed to demonstrate that jurists of reason would find it debatable that Petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the Court will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. No. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not issue.

A separate judgment in accordance with this Opinion, Memorandum, and Order is entered this same date.

Dated this 10th day of December, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE